**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RASHAWN MOSLEY,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:22-cv-163** |
| **v.** | : | **(JUDGE MANNION)** |
| **DEREK OBERLANDER,** | : | |
| **Respondent.** | : | |

## MEMORANDUM

Presently before the court is petitioner, Rashawn Mosley's, amended counseled petition for *habeas corpus*. (Doc. 13.) Petitioner argues that he should be granted a new trial or released from state custody regarding his aggregated life sentence for second-degree murder because *inter alia* he received ineffective assistance of counsel at trial. After consideration of these claims the court will **DENY** the present petition.

## I. BACKGROUND

Petitioner was convicted in 2012 of second-degree murder for shooting Christopher Thompson at close range in the driver's seat of his car during a drug related transaction on July 6, 2004, in Harrisburg's Hall Manor neighborhood. On September 3, 2004, Christopher Stevenson, Defendant's

brother[1], gave a statement to the Harrisburg Police that he witnessed the shooting and saw Petitioner pull the trigger. Two other eyewitnesses, Shamell Cameron and Ronnie Pepper, gave similar statements implicating Petitioner. When faced with these statements Petitioner confessed to shooting Thompson. On September 7, 2005, Petitioner pled guilty to third-degree murder, robbery, and carrying firearms without a license. He was sentenced to a term of incarceration of 20 to 40 years.

In February 2006, petitioner filed a *pro se* petition for relief under the Post Conviction Relief Act ("PCRA") asserting that his plea was induced by ineffective assistance of counsel. The PCRA court denied Petitioner relief without a hearing, but Petitioner appealed to the Pennsylvania Superior Court, who remanded the matter for an evidentiary hearing. The PCRA court then held a hearing before again denying Petitioner relief. Petitioner again appealed the PCRA court's denial to the Superior Court who reversed and remanded the matter for trial because at the time of Petitioner's plea an eyewitness existed that could have testified another individual was the shooter.

---

[1] Respondent and the relevant state court opinions all refer to Christopher Stevenson as Petitioner's brother. However, in his counseled amended petition Petitioner denies any blood relation to Stevenson.

In January 2012, Petitioner was tried but the jury could not reach a unanimous verdict. In September 2012, Petitioner was tried again, and this time convicted of second-degree murder, robbery, recklessly endangering another person, and carrying a firearm without a license. The trial court subsequently sentenced Petitioner to his current aggregated term of life in prison.

On December 11, 2015, Petitioner filed another petition under the PCRA, subsequently supplemented in January 2019 and June 2019, alleging that trial counsel, Anne Gingrich Cornick, was ineffective in failing to investigate defenses and witnesses, provide an adequately funded defense, withdraw due to an alleged conflict of interest, and pursue a claim police incorrectly booked Petitioner. The PCRA court held three separate hearings regarding these issues on April 29, 2019, June 17, 2019, and July 15, 2019, before denying relief on May 7, 2020. Petitioner appealed, but the Pennsylvania Supreme Court denied review on December 23, 2021.

Petitioner then filed a *pro se* petition for *habeas corpus* before this court on February 1, 2022. (Doc. 1) Petitioner submitted the required AO 241 form where he claims entitlement to relief based on ineffective assistance of trial counsel in questioning witnesses, PCRA court error in failing to find his defense was inadequately funded, trial court error in denying his motion for

substitute counsel due to a conflict of interest, and PCRA court error in finding Petitioner's allegedly coerced confession did not prejudice him at trial. However, inserted between the pages of the AO 241 form is a handwritten document where Petitioner lists four alternative grounds for relief: trial court error in denying Petitioner's motion to suppress his confession, trial court error in denying Petitioner's motion for recusal, trial court error in denying Petitioner's post-sentence motion, and trial court error in failing to grant Petitioner a new trial. Additionally at the end of the AO 241 form Petitioner attached a typed document where he lists actual innocence based on new evidence as a fifth ground for relief. Petitioner also indicated in these documents that he intended to file a counseled memorandum of law briefing all his claims. Given the restriction on petitioners filing more than one *habeas* petition, the court gave Petitioner leave to withdraw his *pro se* petition and refile another petition raising all grounds for relief on February 22, 2022. (Doc. 6.)

Petitioner subsequently retained counsel on March 11, 2022, who filed an amended petition on May 31, 2022, which seeks relief based only on ineffective assistance of counsel in questioning witnesses, ineffective assistance of counsel in challenging Petitioner's allegedly misrepresentative mugshot, infringement on the right to counsel by virtue of an inadequately

- 4 -

funded defense, and trial court error in denying Petitioner's motion for substitute counsel due to a conflict of interest. (Doc. 13.) Respondent through the Dauphin County District Attorney's office filed a response on August 29, 2022. (Doc. 15.) Despite Petitioner's *pro se* petition and the claims contained in it having already been withdrawn, Respondent briefed some of the claims raised in the *pro se* petition. Respondent also misnumbers and conflates the claims raised in Petitioner's counseled petition but ultimately still opposes the substance of Petitioner's four operative claims. On October 25, 2023, over a year after Respondent filed its opposition, Petitioner's counsel filed a reply, erroneously docketed as a brief in support. (Doc. 20.) In any event this reply only addresses the first claim raised in Petitioner's counseled petition. The court now addresses Petitioner's claims but only those raised in his operative counseled petition.

## II. LEGAL STANDARD

A petition for writ of *habeas corpus* is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of his confinement and seeking "immediate release or a speedier release from that imprisonment." *Preiser v. Rodriguez,* 411 U.S. 475, 498-99 (1973); *Leamer v. Fauver,* 288 F.3d 532, 542-44 (3d Cir. 2002). A district court is authorized to "entertain an

application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a) (2006). Claimed violations of state law standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension. S*ee Priester v. Vaughan*, 382 F.3d 394, 401–02 (3d Cir. 2004). Furthermore, a state prisoner seeking to invoke the power of this court to issue a writ of *habeas corpus* must have exhausted the remedies available to them in the courts of the state. §2254(b)(1)(A).

These same principles that limit *habeas* relief to errors of a constitutional dimension also require federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by §2254.

First, with respect to legal rulings by state courts, under §2254(d), *habeas* relief is not available to a petitioner for any claim that has been adjudicated on its merits in state court unless it can be shown that the state court decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; *see* 28 U.S.C. §2254(d)(l); or (2)

was "based upon an unreasonable determination of the facts," *see* 28 U.S.C. §2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by *habeas* petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. *See Rice v. Collins*, 546 U.S. 333, 338–39 (2006); *see also Warren v. Kyler*, 422 F.3d 132, 139–40 (3d Cir. 2006); *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, §2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. *See* 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made during criminal proceedings. *See e.g., Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam); *Demosthenes v. Baal*, 495 U.S. 731, 734–35 (1990). This principle also applies to state court factual findings made both by the trial court and state appellate courts. *Rolan v. Vaughn*, 445 F.3d 671 (3d Cir. 2006). Thus, this court may not re-assess credibility determinations made by the state courts and must give equal deference to both the explicit and implicit factual findings made by the state courts. *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000). Applying this standard of review, federal courts may

only grant *habeas* relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." *Rolan*, 445 F.3d at 681.

These general principles apply with particular force to *habeas* petitions that assert claims of ineffective assistance of counsel under the Sixth Amendment. Under federal law, a collateral attack on a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in *Strickland v. Washington*. Specifically, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the *Strickland* prongs to maintain a claim of ineffective counsel. *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001).

*Strickland* requires a petitioner to "establish first that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. *Id.* Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard

of reasonableness under prevailing professional norms. *Id.* Generally, "[t]here is a 'strong presumption' that counsel's performance was reasonable." *Id.* (quoting *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689).

Under the second *Strickland* prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." *Id*. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. Moreover,

> [I]n considering whether a petitioner suffered prejudice, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

*Rolan*, 445 F.3d at 682 (quoting *Strickland*, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in *Strickland*. *See Commonwealth v. Pierce*, 527 A.2d 973, 976–77 (Pa. 1987); *see also Werts v. Vaugh*, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted *Strickland* and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under §2254 may grant federal *habeas* relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of *Strickland*. *Billinger v. Cameron*, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). To prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." *Hackett v. Price*, 381 F.3d 281, 287 (3d Cir. 2004).

The Supreme Court has further observed a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the §2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the

lens of federal *habeas*"). This doubly deferential standard of review especially applies to strategic judgments like those thrust upon counsel in the instant case.

Therefore, in evaluating the first prong of the *Strickland* test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Lewis v. Horn*, 581 F.3d 92, 113 (3d Cir. 2009) citing *Knowles*, 556 U.S. at 124. The presumption can be rebutted by showing "that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." *Id.* citing *Thomas v. Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005) (footnote omitted).

### III. DISCUSSION

Since Petitioner's *pro se* petition was effectively withdrawn the court will only consider the four grounds for relief raised in his operative counseled petition. All these grounds were in some fashion raised before and considered by the state courts. After consideration of these claims as discussed below, this court finds that the state courts' determinations were

- 11 -

not contrary to clearly established law or based on an unreasonable determination of facts.

## A. GROUND ONE: TRIAL COUNSEL ERROR – FAILURE TO INVESTIGATE, INTERVIEW, AND CALL KEY WITNESSES

Petitioner first argues that trial counsel had the names of two separate identified alibi witnesses, Tandra and Shavelle Walker, but did not interview either before trial. According to Petitioner had counsel investigated, interviewed, and called the Walker sisters to testify at trial they would have provided testimony that Petitioner, their cousin, was at their home playing video games with their brother Kevin Walker the night of Thompson's murder. Kevin Walker testified to the same alibi at trial but was impeached by the prosecution with previous *crimen falsi* convictions. Thus, petitioner claims that the Walker sister's testimonies would have also bolstered the credibility of their brother's alibi testimony.

Likewise, Petitioner claims that trial counsel did not interview Abismael Bruno, who Daniel Giorgione, a co-occupant of the car in which Thompson was shot and killed, identified as being present during the shooting. According to Petitioner had Bruno been called to testify he could have provided testimony that Petitioner was not the shooter.

- 12 -

Petitioner raised these arguments before the PCRA court who found that his trial counsel was not ineffective for failing to question these witnesses and even if she was Petitioner did not establish any prejudice from her alleged errors. Specifically, the PCRA court found that it was Attorney Cornick's strategy to argue the confessions of Petitioner and Stevenson were coerced, present Kevin Walker as an alibi witness, and elicit testimony from Daniel Giogione that Petitioner did not shoot Thompson. Moreover, Attorney Cornick testified that she only wanted to focus on Kevin Walker as Petitioner's alibi witness because only he could testify as to Petitioner's whereabouts during the entire night in question, unlike his sisters who only saw Petitioner in their home at few different times that night. Attorney Cornick also testified that she specifically did not call Bruno because she wanted to be able to portray him as the real shooter. As such the PCRA court concluded that Attorney Cornick's decision to focus on these witnesses and not investigate other witnesses was reasonable. *See Commonwealth v. McNeil*, 487 A.2d 802, 806 (Pa. 1985) ("The value of particular defense or witness' testimony is not judged abstractly in the vacuum of what might have been but in reality, of what is.")

Furthermore, the PCRA court concluded that Petitioner established no prejudice from Attorney Cornick's alleged errors because the proposed

additional witnesses would have provided essentially the same testimony as Kevin Walker (and Giogione) who actually did testify at trial. Despite taking the stand in his own defense, Petitioner also declined to testify he was somewhere else at the time of the murder. Accordingly, there is no reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. As such this claim does not warrant *habeas* relief.

## B. GROUND TWO: TRIAL COUNSEL ERROR – FAILURE TO CHALLENGE ALLEGEDLY MISREPRESENTATIVE MUGSHOT

Petitioner next argues that the state courts failed to consider his trial counsel's failure to investigate a "clearly erroneous" mugshot of him created by the Harrisburg Police. According to Petitioner, both Giorgione and Bruno identified the shooter as being 6 feet tall and the mugshot of Petitioner provided during discovery indicted that the Petitioner was 6 feet tall. However, Petitioner was measured by the court and its was stipulated that is he is only 5'8". Still Petitioner's trial counsel did not exploit the discrepancy between his mugshot and actual height. Petitioner claims that had Attorney Cornick done so at trial it would have either made the Harrisburg Police look sloppy or imply the mugshot was fabricated. In either event it would have thrown doubt on the investigation that implicated Petitioner.

Despite his contention that "the panel" failed to consider these issues, the PCRA court specifically addressed whether Petitioner's trial counsel was ineffective in not investigating whether Petitioner's booking information including his mugshot was correct and not cross-examining or impeaching any of the Harrisburg Police witnesses with the erroneous information. The PCRA court concluded that this dispute was *de minimis* given all the other evidence offered and therefore there is no reasonable probability that, but for counsel's alleged error, the outcome of the proceeding would have been different. Petitioner presents no new authority to indicate that this ruling was contrary to clearly established law or based on an unreasonable determination of facts. As such this claim does not warrant *habeas* relief.

## C. GROUND THREE: INFRIDGMENT ON THE RIGHT TO COUNSEL – INADEQUATE COMPENSATION

Petitioner further argues that his right to counsel was infringed because his trial counsel was not adequately compensated. Specifically, Petitioner claims that the funds his trial counsel received to try both of his cases were insufficient, as evidenced by Attorney Cornick's failure to interview multiple witnesses and exploit Petitioner's allegedly misrepresentative mugshot. According to petitioner had he been represented by the Public Defender's Office, an investigator would have interviewed the additional witnesses that

his trial counsel did not question. Likewise, he claims that had he not been indigent and able to hire private counsel, that private counsel would have also hired an investigator.

The PCRA court also considered this claim and concluded that there was no evidence presented by Petitioner that counsel was underfunded and, therefore ineffective. While noting a precise compensation figure was not revealed at the PCRA hearing, the PCRA court found trial counsel's testimony that she did not feel inadequately compensated and did not have other cases drawing her attention away from Petitioner supported a finding she was in fact adequately compensated. Moreover, the PCRA court reiterated that it was trial counsel's reasonable strategy to focus on the witnesses and evidence she presented at trial. Thus, additional funds for an investigator to interview other witnesses and gather other evidence would not have helped Petitioner.

Nonetheless Petitioner now argues against this ruling claiming that his right to counsel was infringed by the fact his trial counsel's compensation rate was below the $125 per hour Criminal Justice Act (CJA) appointment rate for non-capital cases in 2012. Petitioner claims that the United States Supreme Court has found such infringements are so significant that they require *habeas* relief even absent a showing of prejudice. *See United States*

*v. Cronic*, 466 U.S. 648 (1984) (No showing of prejudice is required where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.") *Id*. at 659-660. But this case does not indicate that paying conflict counsel less than the CJA rate is a *per se* violation of the right to counsel. In fact, this case does not even mention defense counsel compensation.

Petitioner further cites a host of out of state authority regarding attorney compensation rates that is not binding precedent on any Pennsylvania court and thus of no moment to this court's required analysis. However, both Petitioner and the PCRA court do point to binding Pennsylvania Supreme Court precedent that an indigent party is denied the right to counsel only when appointed counsel is "so handicapped in the time and resources" that counsel "is systematically incapable of providing constitutionally adequate representation." Under this standard the PCRA court found that Petitioner was not denied the right to counsel. Regardless of whether Petitioner's trial counsel was compensated at a rate below the applicable CJA rate, Attorney Cornick testified to the PCRA court that she felt adequately compensated. Moreover, trial counsel's reasonable strategy did not entail the additional

resources that Petitioner claims she needed. Accordingly, Petition's right to counsel was not infringed by his trial counsel's level of compensation. As such this claim does not warrant *habeas* relief.

### D. TRIAL COURT ERROR – CONFLICT OF INTEREST

Finally, Petitioner argues that the trial court erred in not appointing new counsel for him after it was revealed Attorney Cornick's husband, Sean Cornick, worked for the Harrisburg police and was indirectly involved in the investigation of the Thompson shooting. Petitioner argues that Attorney Cornick, as the spouse of a Harrisburg Police Officer, had financial ties to the police witnesses through the salary of her spouse as well as "a natural desire not to attack the professionalism of a police force" that she also needed to argue coerced her client's confession. Furthermore, Petitioner claims that Sean Cornick was at least "peripherally" involved in his case because he asked Petitioner's brother, Jamar Mosley, "to help him out with investigations" as a confidential informant around the time of Petitioner's trials.

Before the PCRA court Petitioner argued that his trial counsel should have withdrawn for these reasons and the trial court erred in denying his motion for substitute counsel. But the PCRA court rejected this claim because Petitioner was unable to show any prejudice from this alleged

conflict. The Pennsylvania Supreme Court has held that a defendant cannot succeed on a conflict-of-interest claim absent a showing of actual prejudice. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1147 (Pa. 2012). Prejudice is presumed "when the appellant shows that trial counsel was burdened by an actual-rather than mere potential-conflict of interest. To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel actively represented conflicting interests; and (2) those conflicting interests adversely affected his lawyer's performance." *Id.*

The PCRA court found that Petitioner failed to present any credible evidence that Attorney Cornick's relationship with Sean Cornick, adversely affected her representation of Petitioner. Specifically, the PCRA court found Attorney Cornick's marriage did not prevent her from attacking the conduct of the Harrisburg Police when they took Petitioner's confession. It was stipulated to that Sean Cornick did know Jamar Mosley and solicited him to perform undercover work between 2011 and 2013. Furthermore, Sean Cornick, as well as another Detective testified to the PCRA court that he was not involved in Petitioner's case. The only evidence presented to the PCRA court of a conflict due to trial counsel's marriage was the Petitioner's own speculative testimony. Thus, the PCRA court found that there was no conflict, and in turn no prejudice, that could support finding a trial court error.

Still Petitioner argues that Jamar Mosley also testified that Sean Cornick brought up Petitioner's case in the context of asking him to work as a confidential informant. Petitioner further implies that Jamar Mosley's testimony should be trusted over that of Sean Cornick's, because the later has felony convictions that constitute *crimen falsi*, while the former has no such convictions. Petitioner is correct, that Sean Cornick plead guilty in 2018 to conversion of government property and theft from programs receiving government funds both crimes that constitute *crimen falsi*. It is also true that Jamar Mosley testified to the PCRA court that Sean Cornick told him in September 2012 that he knew his brother (Petitioner) did not commit the crimes he was accused of. However, Jamar Mosley did not testify that Sean Cornick ever asked him about Petitioner's case and even if he did Jamar Mosley further testified that he never did any of the work he was asked to do as a confidential informant.

Moreover, Petitioner at no point argues that Attorney Cornick actively represented conflicting interests, only that her marriage created a conflict of interest. To show an actual conflict of interest a party must demonstrate that counsel "actively represented conflicting interests." *Commonwealth v. Collins,* 598 Pa. 397, 957 A.2d 237, 251 (2008). Clients' interests conflict when "during the course of representation" they "diverge with respect to a

material factual or legal issue or to a course of action." *Id*. Here it is not argued that Attorney Cornick represented another client before, during, or after she represented Petitioner let alone one with any conflicting interest. Accordingly, the state courts' conclusion that Petitioner presented no credible evidence of a conflict with his trial counsel or prejudice therefrom remains intact. As such this claim does not warrant *habeas* relief.

## E. CERTIFICATE OF APPEALABILITY

To receive a certificate of appealability under §2253(c) a Petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims at issue debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In light of the foregoing the court concludes that Petitioner has made no such showing, nor can he based on the state court findings and other evidence presented. As such a certificate of appealability will not issue in this case.

## IV. CONCLUSION

Based on the foregoing Petitioner, Rashawn Mosley's, petition for *habeas corpus* will be **DENIED** and a certificate of appealability will be not

issued. The Clerk of Court will be ordered to close this case. An appropriate

order follows.

$s/$ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 12, 2024**
22-163-1

- 22 -